Brian E. Claypool, Esq., State Bar# 134674
THE CLAYPOOL LAW FIRM
1055 East Colorado Blvd., 5th Floor
Pasadena, CA 91106
Telephone: (626) 240-4616
Facsimile: (626) 796-9951
E-mail: becesq@aol.com

Attorneys for Plaintiff,
Mordechai Pelta

BY FAX

E-filing

FILED
2012 MAY 30 P 1:40
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

NJV

MORDECHAI PELTA, an individual,
    Plaintiff,

vs.

COUNTY OF DEL NORTE; JON ALEXANDER; DOES 1-10, inclusive,
    Defendants.

Case No.: CV 12 2756

**COMPLAINT FOR DAMAGES**

1. Retaliation (42 U.S.C. §2000e-3(a))
2. Violation of the California Whistleblower Protection Act (Cal. Govt. Code §8547.1)
3. Violation of California Labor Code section 1102.5(b)

**DEMAND FOR JURY TRIAL**

- 1 -
COMPLAINT FOR DAMAGES

## COMPLAINT

Plaintiff Mordechai Pelta, for his complaint against Defendants County of Del Norte, Jon Alexander, and Does 1-10, inclusive, alleges as follows:

## INTRODUCTION

1. This wrongful termination matter seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the unlawful and unjustified retaliatory termination of Mordechai Pelta.

## PARTIES

2. At all relevant times, Plaintiff MORDECHAI PELTA ("PELA") has resided in the County of San Francisco, California.

3. At all relevant times, Defendant JON ALEXANDER ("ALEXANDER") has worked in the County of Del Norte, California.

4. At all relevant times, Defendant COUNTY OF DEL NORTE ("COUNTY") is and was organized and existing under the laws of the State of California. At all relevant times, COUNTY was the employer of Defendants DOES 1 through 10 ("DOES"). At all relevant times, DOES 1-10 were residents of COUNTY OF DEL NORTE, California. DOES 1-10 are sued in their individual capacity for damages only.

5. At all relevant times, Defendants DOES 1-10 were duly authorized employees and agents of the COUNTY, who were acting under color of law within the course and scope of their respective duties as employees of the COUNTY and with the complete authority and ratification of their principal, Defendant COUNTY.

6. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

7. The true identities of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFFS, who therefore sues these defendants by such fictitious names. PLAINTIFFS will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

8. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of COUNTY.

9. In 2011, PLAINTIFF filed a comprehensive and timely claim for damages with COUNTY pursuant to applicable sections of the California Government Code.

10. COUNTY denied said claims by operation of law.

## JURISDICTION AND VENUE

11. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 2000e-3(a). Jurisdiction is founded on 28 U.S.C. §§1331, 1343, and 1367.

12. Venue is proper in this Court under 28 U.S.C. §1391(b), because Plaintiff resides in the County of San Francisco, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. PLAINTIFF repeats and realleges each and every allegation in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth herein.

14. In January 2011 there were several incidents of ALEXANDER becoming violent in the office, punching walls, and verbally attacking other DA employees. After someone in the office reported his conduct, ALEXANDER immediately questioned PELTA about being the snitch. PELTA had not reported ALEXANDER to Jay Sarina, chief administrative officer, and told ALEXANDER as much. ALEXANDER did not believe PELTA and began treating him in a hostile and disparaging manner following this incident.

15. On February 3, 2011 PELTA interviewed for a job in Humboldt. ALEXANDER made it known in the office that he wanted PELTA out of the office permanently and even implied as much in an email to his secretary.

16. On March 2, 2011 PLAINTIFF filed a grievance against the County of Del Norte's District Attorney's Office due to policy violations regarding travel and furlough days. The violations being promulgated by then District Attorney ALEXANDER indicated disparate treatment between the manner in which he treated PELTA and others in the office. On March 18, 2011 a decision was issued in PLAINTIFF'S favor.

17. After giving PLAINTIFF twenty minutes to charge a case, ALEXANDER was verbally abusive towards PELTA in front of MICKS. ALEXANDER was upset that he "just got crucified" due to PELTA'S "horrible job" in charging the case and went on and on insulting and demeaning PELTA in front of their colleagues. This unreasonable reaction and disparaging remarks amount to violence under the office's Policy Statement.

18. ALEXANDER verbally attacked and berated PLAINTIFF when the two were in the office working late on the night of April 6, 2011. ALEXANDER was upset over PLAINTIFF dismissing the Padgette DUI case, due to a lack of evidence. This dismissal was done after consulting with PLAINITFF'S supervisor. On April 7, 2011 PELTA hand-delivered a letter to his direct supervisor, Assistant District Attorney Katie Micks ("MICKS") outlining the abusive incident involving ALEXANDER and the mistreatment of PLAINTIFF by DEFENDANT ALEXANDER. PELTA received no formal response from MICKS. However, on April 10, 2011, PELTA received a

letter from ALEXANDER that he would be contacting CHP in regards to their lack of assistance in the Padgette case. ALEXANDER would not let this incident go and later asked PELTA for a memo outlining CHP's neglect in helping PELTA obtain the evidence he needed for the Padgette case because CHP was conducting an internal affairs investigation on the matter. PELTA called the CHP directly and was told there was no internal affairs investigation, and that it was not their policy to contact the DA's office even if there was one. At all times MICKS reassured PELTA that he had acted appropriately in handling the Padgette case.

19. In April 2011, there were several instances of ALEXANDER dumping weak cases on PELTA to prosecute last minute and then verbally demeaning and abusing him when there was not a positive outcome. PELTA'S supervisor, MICKS, told PELTA that she believed ALEXANDER was setting him up to fail. In addition to the verbal abuse, ALEXANDER also threatened PLAINTIFF on various occasions, stating that PELTA better win, "or else, we will not go there now" and "[you] better win the dissuasion count or else…". On another occasion, ALEXANDER became violent towards PELTA and commanded him, PELTA, as ALEXANDER'S servant to do as he is told because he was lucky to even have a job. This outburst was due to PELTA having a differing opinion than ALEXANDER on a case the office was prosecuting. No one else in the office was threatened in this manner, not even after losing a preliminary hearing.

20. On April 26, 2011 PELTA met with Sheriff Dean Wilson to discuss some alleged criminal activity carried out by ALEXANDER, including carrying a concealed weapon without a permit. ALEXANDER had already spoken to the Sheriff to get PELTA'S permit to carry a concealed weapon revoked, which the Sheriff admitted to PELTA was unusual as there was no reason to revoke PELTA'S permit.

21. On April 29, 2011 PELTA filed a grievance due to the hostility of the work environment becoming so great and in it he outlined all of the abovementioned incidents. The Personnel/Risk Management Office did not follow policy and waited almost 6 months to give PELTA any type of response, rather than the policy outlined 30 days.

22. On April 29, 2011, PELTA also reported ALEXANDER'S egregious conduct to the California State Bar. In the complaint PELTA outlines ALEXANDER'S unauthorized practice of law, his prosecuting cases where he has a conflict of interest, his attempts at influencing members of the Attorney General's Office from not prosecuting cases where the defendants were ALEXANDER'S former clients, using COUNTY property for personal use, stealing COUNTY property, and threatening witnesses. The State Bar is currently pursuing these allegations, having elected to conduct a disciplinary hearing against ALEXANDER.

23. The hostile work environment created by ALEXANDER resulted in having a negative effect on PELTA'S health and his physician orders that he take a medical

stress leave. PELTA informed the office of this, and gave them the doctor's orders, which stated that PELTA be out on sick leave from May 2 to May 16, 2011. Despite being out on medical leave, ALEAXNDR continuously tried to get PELTA to continue working on cases for the DA's office, requiring MICKS to intervene. While PELTA was on medical leave, ALEXANDER took the opportunity to make disparaging comments about him to colleagues and members of the Sheriff's Department. PELTA wrote a grievance regarding this on May 27, 2011.

24. The State Bar suspended ALEXANDER from the practice of law on May 21, 2011. He continued to work after this.

25. June 9, 2011 PELTA is sent a letter from ALEXANDER suspending him without pay. This is in violation of the office's Memorandum of Understanding ("MOU").

26. June 13, 2011 PELTA sends letter to DA's office requesting his pay be reinstated in compliance with the MOU.

27. June 26, 2011 PELTA files another grievance against ALEXANDER and the DA's office pertaining to the violations of the MOU and other policies that occurred in the handling of his suspension, including defamatory statements made by ALEXANDER to the media and others.

28. July 23, 2011 an ad is placed on the California District Attorneys Association website for PELTA'S position, even though he has only been suspended and is awaiting a hearing on the suspension.

29. Since suspending PELTA on June 9, 2011, ALEXANDER has made countless untrue and disparaging comments aimed directly at PELTA through statements made to the Times-Standard, Del Norte Daily Triplicate, and other local media outlets.

30. PELTA has tried to gain meaningful employment since being terminated from the Del Norte County's DA office. He has not received a job offer because of the negative and untruthful remarks made by ALEXANDER.

## FIRST CAUSE OF ACTION

### Retaliation (42 U.S.C. §2000e-3(a))

(By Plaintiff As Against All Defendants)

31. PLAINTIFF repeats and realleges each and every allegation in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth herein.

32. PLAINTIFF was retaliated against by Defendants because he engaged in the protected activity of writing grievances against a supervisor that was in violation of the office's policies, the MOU, and rules of the California State Bar, among others.

33. DEFENDANT ALEXANDER was aware of thee grievances that PELTA filed against him.

34. ALEXANDER threatened PLAINTFF several times. Each time, ALEXANDER implied PELTA would lose his job if he did not gain a favorable outcome on a case.

35. PLAINTIFF received his notice of suspension and proposed termination only after filing an extensive grievance against ALEXANDER to the Personnel/Risk Management Office and State Bar. After continuing to assist in the State Bar investigation and providing it with further details into the misconduct, PLAINTIFF was terminated.

36. In doing the things alleged herein, Defendants acted with intent to violate PLAINTIFF'S rights, or at least in conscious and reckless disregard of PLAINTIFF'S rights and to the injurious consequences to result from said violation. As such general, special and punitive damages are sought, according to proof.

37. At no time before being placed on administrative leave was PLAINTIFF ever disciplined or reprimanded for his job performance.

38. As a result of the conduct described herein, PLAINTIFF has suffered, and will continue to suffer mental and emotional injuries, distress, humiliation, damage to his good name, reputation, standing in the community, and lost employment opportunities.

## SECOND CAUSE OF ACTION

## Violation of the California Whistleblower Protection Act (Cal. Govt. Code §8547.1)

(By PLAINTIFF As Against All Defendants)

39. PLAINTIFF repeats and realleges each and every allegation in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth herein.

40. PLAINTIFF, a state employee, reported abuse of authority and violations of law occurring within the DA's office to his superiors, the Personnel/Risk Management Office several times and to the California State Bar after nothing was done by office superiors.

41. Following PLAINTIFF'S detailed comments to the Personnel/Risk Management Office and the State Bar, he was suspended and then terminated.

42. In doing the things alleged herein, Defendants acted with intent to violate PLAINTIFF'S rights, or at least in conscious and reckless disregard of PLAINTIFF'S rights and to the injurious consequences to result from said violation. As such general, special and punitive damages are sought, according to proof.

43. Prior to being suspended PLAINTIFF was never disciplined or reprimanded for his job performance.

44. As a result of the conduct described herein, PLAINTIFF has suffered, and will continue to suffer mental and emotional injuries, distress, humiliation, damage to

COMPLAINT FOR DAMAGES

his good name, reputation, standing in the community, and lost employment opportunities.

## THIRD CAUSE OF ACTION

### Violation of California Labor Code 1102.5

(By PLAINTIFF as Against All Defendants)

45. PLAINTIFF repeats and realleges each and every allegation in paragraphs 1 through 44 of this Complaint with the same force and effect as if fully set forth herein.

46. California Labor Code section 1102.5(b) states than "an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation or noncompliance with a state or federal rule or regulation".

47. PLAINTIFF engaged in several instances of protected activity, specifically in speaking to the State Bar and the Sheriff's Department, and as a result was subjected to adverse employment actions.

48. California Labor Code section 1104 states that for actions brought under section 1102.5(b), "the employer is responsible for acts of his managers, officers, agents, and employees". Here the DA's Office is a subsidiary of COUNTY and

employees of COUNTY undertook all retaliatory actions in connection with section 1102.5(b).

49. By engaging in interviews with the State Bar and Sheriff's Department in regards to the investigation into misconduct surrounding ALEXANDER, PLAINTIFF was participating in protected activity. However, following this protected activity, PLAINTIFF was suspended and later terminated.

50. As a result of the conduct described herein, PLAINTIFF has suffered, and will continue to suffer mental and emotional injuries, distress, humiliation, damage to his good name, reputation, standing in the community, and lost employment opportunities.

51. In doing the things alleged herein, Defendants acted with intent to violate PLAINTIFF'S rights, or at least in conscious and reckless disregard of PLAINTIFF'S rights and to the injurious consequences to result from said violation. As such, pursuant to California Labor Code sections 1102.5, 1104, and 1105 general and special damages are sought according to proof. In addition, punitive damages are also sought.

52. As a further result of the retaliatory conduct described herein, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities and occupation, causing PLAINTIFF to sustain damages for lost income, wages, earning, and future earning capacity, lost retirement and pension

benefits, and other economic damages, including general and punitive damages, to be ascertained according to proof.

COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants Alexander and Does 1-10, inclusive as follows:

A. For compensatory and general damages under federal and state law, in an amount in excess of $1 million;

B. For punitive damages against the individual defendants in an amount to be proven at trial;

C. For pre and post judgment interest;

D. For reasonable costs of this suit and attorney's fees;

E. For statutory attorney's fees; and

F. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: May 25, 2012                THE CLAYPOOL LAW FIRM

                                   By _____

                                   Brian E. Claypool
                                   Attorney for Plaintiff
                                   Mordechai Pelta

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: May 25, 2012

**THE CLAYPOOL LAW FIRM**

By _____

Brian E. Claypool
Attorney for Plaintiff
Mordechai Pelta

COMPLAINT FOR DAMAGES